FIFTH DIVISION
JULY 13, 2007

1-05-3744

| | | |
|---|---|---|
| AFFORDABLE HOUSING PRESERVATION | ) | Appeal from the |
| FOUNDATION, A Colorado not-for-profit | ) | Circuit Court |
| Corporation, | ) | of Cook County |
|        Plaintiff-Appellee, | ) | |
| | ) | |
|     v. | ) | No. 04 CH 8832 |
| | ) | |
| SMITH WIIAMS, | ) | |
| | ) | |
|        Defendant-Appellant, | ) | |
| | ) | |
| (Illinois Affordable Housing | ) | |
| Preservation Foundation, an Illinois | ) | |
| not-for-profit Corporation, | ) | The Honorable |
| | ) | Julia M. Nowicki, |
|        Defendant.) | ) | Judge Presiding |
| | ) | |

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Affordable Housing Preservation Foundation, a Colorado not-for-profit

Corporation (AHPF), brought an action seeking declaratory and injunctive relief against

defendants Smith Wiiams and the Illinois Affordable Housing Preservation Foundation (Illinois

Affordable). On March 24, 2005, the lower court entered a final order granting a permanent

injunction. On April 22, 2005, defendant Wiiams filed a motion to vacate the March 24 injunction

order and on July 21, 2005, Wiiams filed a motion to reconsider the March 24 order. Both

motions were denied on October 20, 2005. On November 18, 2005, Wiiams filed his notice of

appeal.

Our initial inquiry concerns whether we have jurisdiction to hear this appeal. Plaintiff

contends that defendant's notice of appeal was untimely since there was no legitimate post-judgment motion filed within 30 days of the March 24, 2005, order granting a permanent injunction, which was a final judgment. Plaintiff argues that defendant's motion to vacate was invalid because it did not include any specific grounds that would warrant the court's vacating its decision and was nothing more than an attempt to stall for time and, therefore, did not extend the time in which to file a notice of appeal. After thoroughly reviewing the record, the briefs and the case law, we have determined that defendant's notice of appeal was timely and this court has jurisdiction of this appeal. We conclude that defendant's motion to vacate met the requirements for postjudgment motions as set out by section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2004)), thus triggering the extension of time in which to file a notice of appeal.

 In addressing plaintiff's claims, we begin with the proposition that jurisdiction is conferred upon this court only through the timely filing of a notice of appeal. *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 538, 470 N.E.2d 290 (1984); 155 Ill. 2d R. 301. Under Supreme Court Rule 303(a) (155 Ill. 2d R. 303(a)), a notice of appeal must be filed "within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending post-judgment motion."

Here the record shows that within 30 days of the circuit court's entry of an injunction, the defendant did file a posttrial motion directed against the judgment. As previously indicated, the sole issue raised by plaintiff is the sufficiency of that motion. Because the motion attacked a judgment entered by the court sitting without a jury, it was subject to section 2-1203 of the Code

2

of Civil Procedure (735 ILCS 5/2-1203 (West 2004)) and had to specifically request one or more of the types of relief specified in that provision, i.e., rehearing, retrial, modification of the judgment, vacating the judgment or other similar relief. *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 461 (1990); *Fultz v. Haugan*, 49 Ill. 2d 131, 135-36, 305 N.E.2d 873 (1971). Defendant's motion here included such a request. It expressly asked the court to vacate its order. Although defendant did not detail in the motion itself precisely why he thought the judgment was infirm, he was not required to do so under section 2-1203. Section 2-1203 provides in pertinent part:

> "(a) In all cases tried *without a jury*, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." (Emphasis added.) 735 ILCS 5/2-1203 (West 2004).

In contrast to section 2-1202 of the Code of Civil Procedure (735 ILCS 5/2-1202 (West 2004)), which governs post-trial motions in jury cases, section 2-1203 contains no requirement that the motion contain the points on which it is based or that it specify the grounds supporting it. See, e.g., *In re Marriage of Jerome*, 255 Ill. App. 3d 374, 389, 625 N.E.2d 1195 (1994).

Notwithstanding the plain language of the statute, this court has sometimes viewed the requirements for posttrial motions under section 2-1203 more stringently. Based on language the Illinois Supreme Court used in *Andersen v. Resource Economics Corp.*, 133 Ill. 2d 342, 347, 549 N.E.2d 1262 (1990), and *Beck v. Stepp*, 144 Ill. 2d 232, 241, 579 N.E.2d 824 (1991), various

appellate court decisions have held that motions filed under section 2-1203 are required to specify the grounds warranting the relief requested. See, e.g., *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 801 N.E. 2d 1031 (2003); *J.D. Marshall, International, Inc. v. First National Bank of Chicago*, 272 Ill. App. 3d 883, 888, 651 N.E.2d 518 (1995); *Sho-Deen, Inc. v. Michel*, 263 Ill. App. 3d 288, 293, 635 N.E.2d 1068 (1994). However, the circumstances in *Andersen* and *Beck* were qualitatively different from those present here.

In *Andersen*, the supreme court stated that a postjudgment motion must (1) include a request for at least one of the forms of relief specified in section 2-1203 and (2) allege grounds that would warrant the granting of the relief requested. *Andersen*, 133 Ill. 2d at 347. Because the plaintiff's motion in *Andersen*, which was merely a motion for leave to amend, failed in the first instance to include a request for any of the forms of relief specified in section 2-1203, the court did not address the merits of the second criterion. *Andersen*, 133 Ill. 2d at 347-48, 549 N.E.2d at 1264. Unlike the plaintiff in *Andersen*, here the defendant filed a proper motion to vacate which was directed against the judgment.

The *Andersen* court noted in <u>dictum</u> that the posttrial motion at issue lacked specificity and was "nothing more than a title and an ambiguous prayer for relief with absolutely no substance in between." *Andersen*, 133 Ill. 2d at 347, 549 N.E.2d at 1264. In discussing the specificity requirement, the *Andersen* court relied upon the case of *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 415 N.E.2d 337 (1980). The *Andersen* court, however, failed to note that *Brown* was a jury case decided under the statute dealing with jury cases. The posttrial motion in question in *Brown* was determined to be inadequate under section 68.1(2) of the Civil Practice

4

1-05-3744

Act (Ill. Rev. Stat.1979, ch. 110, par. 68.1(2)) and Supreme Court Rule 366(b)(2)(iii) (73 Ill. 2d R. 366(b)(2)(iii)), both of which applied to jury cases.

In *Beck*, the only document submitted by counsel after entry of summary judgment was a letter to the trial judge noting that the judge's order differed from counsel's understanding of what the court told the parties it was going to do during a conference call. That letter did not constitute an application for judicial relief. It therefore could not qualify as any kind of motion, much less a posttrial motion under section 2-1203.

Because neither *Andersen* nor *Beck* involved motions attacking the circuit court's judgment and requesting the type of relief contemplated by section 2-1203, the issue of how much specificity is required by a proper section 2-1203 motion was not actually before the court. The court's discussion of the specificity requirements should therefore not be construed as establishing a rule that is controlling where, as here, the postjudgment motion does attack the circuit court's judgment and does request relief in accordance with section 2-1203. See *Mendelson v. Ben A. Borenstein & Co.*, 240 Ill. App. 3d 605, 615, 608 N.E.2d 187 (1992).

In this case, the postjudgment motion was clearly identifiable as such, it was directed at the circuit court's judgment, and it included an explicit request that the judgment be vacated, the type of relief contemplated by section 2-1203 of the Code. That was not true in either *Andersen* or *Beck*.

Finally, in *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186, 737 N.E.2d 160 (2000), the Illinois Supreme Court reversed a decision of this court and held this court did not have jurisdiction because plaintiff did not file a timely notice of appeal. In *Berg*, the plaintiff filed a

5

motion to reconsider or, in the alternative, for leave to file an amended complaint. The trial court denied reconsideration and took under advisement the request for leave to amend. Five weeks later the trial court denied leave to amend and the plaintiff filed her notice of appeal five days after that. The supreme court held that this court lacked jurisdiction because the plaintiff filed her notice of appeal more than 30 days after the trial court's denial of her motion to reconsider. The court specifically noted that it need not decide whether plaintiff's post-judgment motion was sufficient to toll the time for filing a notice of appeal. Again, the issue of how much specificity is required by a proper section 2-1203 motion was not addressed by the court.

Thus, we conclude that, despite the fact that defendant's motion did not contain the specific grounds relied upon for its request for relief, it nonetheless met the requirements of section 2-1203 and was a valid postjudgment motion. The defendant's notice of appeal was timely filed within 30 days of the trial court's ruling on the postjudgment motion.

Having determined that we have jurisdiction of this appeal, we now address the merits. Defendant appeals from the trial court's order entering a permanent injunction against both defendants.

The suit arose from a series of actions taken by defendant Wiiams with respect to AHPF and its real property, the Lawless Housing Development located at 3510 S. Rhodes, Chicago. The Lawless Housing Development consists of 754 residential units and was acquired by AHPF with Illinois Housing Development Authority bonds pursuant to a Housing and Urban Development financial guaranty.

AHPF was incorporated in Colorado on January 17, 1984, as a not-for-profit corporation

organized to sponsor, on a charitable basis, the purchase, development, construction and operation of housing facilities and services for elderly and handicapped, or for persons of low and moderate income. AHPF has continuously operated the Lawless Housing Development since 1984.

On November 1, 2002, AHPF's qualification to do business in Illinois was administratively revoked by the Secretary of State of Illinois for failing to file an annual report by June 1, 2002. On March 14, 2003, defendant Wiiams formed an Illinois not-for-profit corporation also named Affordable Housing Preservation Foundation, because the name was available as a result of the revocation of AHPF's status in Illinois. On July 1, 2003, AHPF was administratively dissolved by the Secretary of State of Colorado for failing to file its annual report there.

On July 7, 2003, Wiiams, describing himself as president of the Illinois AHPF, filed with the Colorado Secretary of State an application for reinstatement of AHPF's corporate status in Colorado. Defendant Wiiams was a stranger to AHPF who had never been an officer, director or registered agent of AHPF and had never been authorized to take action on behalf of AHPF.

On September 15, 2003, defendant Wiiams executed and recorded a quitclaim deed in the name of AHPF transferring title to a portion of the Lawless Housing Development to Illinois AHPF, the Illinois not-for-profit which Wiiams formed in March 2003. Then in October 2003, Wiiams filed with the Colorado Secretary of State a plan to merge the original Colorado AHPF into the Illinois AHPF, which Wiiams had formed.

On June 1, 2004, AHPF filed suit against Wiiams and his corporation, Illinois AHPF, seeking an injunction ordering Wiiams and Illinois AHPF to rescind the transactions taken in the

1-05-3744

name of AHPF and enjoining Wiiams and Illinois AHPF from taking any further action with respect to AHPF or its property.

The trial court held an evidentiary hearing and entered an order granting a permanent injunction against both defendants. Only defendant Wiiams appeals that order. Defendant's only arguments on appeal concern plaintiff's capacity to sue. Defendant contends that AHPF, as a dissolved corporation, did not have the capacity to file suit since the issues raised by the suit occurred after dissolution; that AHPF could not file suit in its name because it had been merged into a foreign corporation; and that AHPF did not have capacity to sue because it had been dissolved and never became an unincorporated association.

Pursuant to Colorado law it is clear that AHPF had the capacity to file this lawsuit. Section 7-134-105 of the Colorado Corporate Code provides:

"(1) A dissolved nonprofit corporation continues its corporate existence but may not carry on any activities except as is appropriate to wind up and liquidate its affairs, including:

(a)     Collecting its assets;

\*       \*       \*

(e)     Doing every other act necessary to wind up and liquidate its assets and affairs.

\*\*\*

(3) Dissolution of a nonprofit corporation does not:

\*       \*       \*

(d)     Prevent commencement of a proceeding by or against the nonprofit corporation in its entity name;" Colo. Rev. Stat. Ann. §7-134-105 (West 2006).

8

1-05-3744

Colorado law clearly provides that a dissolved nonprofit corporation continues to exist for the purpose of, among other things, collecting its assets. Further, it is not prevented from commencing a lawsuit in its name. Here, AHPF commenced this suit in order to regain title to certain assets, specifically the real property located at 3510 S. Rhodes, Chicago, the Lawless Housing Development. Defendant argues that AHPF does not have the capacity to sue because the cause of action accrued after AHPF had been dissolved. Colorado statute does not require that a cause of action arise before the dissolution. Thus, we find no merit to this argument.

We find that the plaintiff, AHPF, had the capacity to sue in its corporate name. For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.